No. 43,927

State of Kansas, *Plaintiff-Appellee,* v. Robert L. Bachmann, *Defendant-Appellant.*

(396 P. 2d 370)

Opinion filed November 7, 1964.

*Lee Hornbaker,* of Junction City, argued the cause, and *Howard W. Harper, Richard F. Waters,* and *B. L. Abbott,* all of Junction City, were with him on the brief for the appellant.

*William D. Clement,* county attorney, argued the cause, and *William M. Ferguson,* attorney general, and *Robert J. Lewis, Jr.,* assistant attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal in an embezzlement prosecution under G. S. 1949, 21-545, wherein defendant was charged, tried and convicted by a jury verdict which was approved by the trial court, and defendant sentenced thereunder.

Both trial and posttrial errors are complained of including the overruling of defendant's motion for new trial. A number of very important legal questions are raised in this appeal but the primary one appears to us to be under G. S. 1949, 62-503, the two year statute of limitations applicable in such criminal prosecutions.

The evidence reflects that Richard M. Cole was administrator of the Junction City Municipal Hospital from early in 1957 until December 31, 1960, in which capacity he was the general administrative agent of the hospital board and was familiar with the plant operations, employees, and record-keeping systems of the hospital. In September, 1958, Cole hired defendant as his assistant and office manager, and defendant served in that capacity until about October 25, 1959.

Daily ledger postings were kept by several employees of the hospital including Mrs. Jewell K. Warner, a Mrs. Green, defendant Bachmann, and Mr. Cole and deposit slips were made and receipts written for money received by these various people. Incoming mail was opened by Cole or the defendant and the cash box receipts were usually checked by defendant. At least four people knew the combination to the safe. Mr. Cole knew the bookkeeping system thoroughly and he was aware of the fact that a patient's ledger sheet could be posted without a corresponding entry being made in the so-called "receipts journal." Cole customarily made a monthly check of the receipts journal and he testified that all during the period he was employed by the hospital, the accounts receivable control figure had never checked out with the unpaid ledger file, that is, the accounts receivable.

A three man board governed the hospital. Due to constant discrepancies between the accounts receivable control figure and accounts receivable in the ledger sheets, John Strain, a certified public accountant who had audited the hospital books for a number of years, had repeatedly recommended to the board that a verification of the accounts receivable be made but because of the expense, this was not done until in December, 1960, when Cole, who was planning to leave the hospital, sought and obtained such verification of the accounts receivable.

The record discloses that in the latter part of October, 1959, pursuant to a telephone call relative to the account of Arthur Barger, Jewell K. Warner had made a search for the Barger ledger sheet and when she was unable to find it, Cole had directed that a new ledger sheet be made up. Cole's testimony was that on October 26, 1959, he, therefore, knew that such ledger sheet was missing from the hospital files.

As a result of the audit conducted by John Strain in December, 1960, it was shown that the Barger account of $551.81 had been paid although the Barger ledger sheet reflected it as being unpaid. The hospital board thereafter caused a more extensive audit to be made and such audit revealed a total shortage of almost $9,000 in the years 1959 and 1960 of which $8,118.31 was covered by surety bond but the remainder of $876.47 was not.

The instant criminal prosecution was commenced on November 30, 1962, and is based on the shortage of $551.81 which resulted from the Barger transaction.

The record further discloses that when Cole became administrator of the hospital, he had suggested the present system of bookkeeping be adopted by the board, which was done, and he thereafter initiated the system into his management of the hospital. Cole was a member of the board of the hospital and had complete knowledge and control of all operations including the administrative care of the books and records. Thus the conclusion is inescapable that continuing discrepancies in the system, when brought to the attention and notice of Cole, were also brought to the attention and notice of the board. It follows that the hospital had notice on October 26, 1959, that a ledger sheet was missing and also had knowledge that defendant had terminated his employment as assistant manager to Cole on about October 25, 1959. We cannot overlook the unrefuted testimony concerning failure of the hospital to investigate the annual discrepancies shown by the reports of the auditor as well as its failure to have a verification of the accounts receivable which had been recommended by the auditor on several occasions.

While, under our view of this case, we do not reach the question with respect to an inquisition commenced by the county attorney, as shown in the record, it nevertheless was begun on September 21, 1961, which was clearly within the two year period from October 26, 1959. However, no action was commenced against defendant until the complaint was filed on November 30, 1962, charging him with embezzlement. Obviously, more than two years had elapsed between October 26, 1959, the date of notice to Cole that a discrepancy in the records existed, and November 30, 1962, when this prosecution was commenced. The action was, therefore, too late and is barred under G. S. 1949, 62-503, notwithstanding that G. S. 1949, 62-504 provides that concealment tolls the statute, because of the discovery of the commission of the crime.

Judgment reversed with directions to discharge defendant.